**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| JASON KADEL, | § § § | |
| Plaintiff, | § § | |
| v. | § § | C.A. No. 4:23-cv-01089-P |
| AMAZON.COM, INC., ET AL. | § § § | |
| Defendants. | § § § | |

## PLAINTIFF'S COMPLAINT

1. Plaintiff Jason Kadel files this, his Complaint against Amazon.com, Inc.; Amazon Logistics, Inc.; and Amazon.com Services LLC and respectfully shows the following:

### I. PARTIES

2. Plaintiff Jason Kadel is an individual who resides in Fort Worth, Texas. Plaintiff Kadel was employed in Alliance, Fort Worth County, Texas at all times relevant to this complaint.

3. Defendant Amazon Logistics, Inc. is a Delaware Corporation with its principal place of business in Seattle, Washington.

4. Defendant Amazon.com Services LLC is a Delaware Corporation with its principal place of business in Seattle, Washington.

5. Defendant Amazon.com, Inc. is a Delaware Corporation with its principal place of business in Seattle, Washington.

6. Collectively Amazon.com Services LLC, Amazon Logistics, Inc. and Amazon.com, Inc. are referred to collectively herein as "AMAZON."

7. AMAZON engaged in all of the alleged acts while Mr. Kadel was an employee based in and working from the DFW7 Warehouse in Haslet, Texas, within Tarrant County. At all relevant times, Mr. Kadel was a resident of Tarrant County or Hood County.

## II. JURISDICTION

8. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, based on federal question jurisdiction, as Mr. Kadel alleges causes of action arising under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., as amended. The Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over all other claims in this action because they form part of the same case or controversy under Article III of the United States Constitution.

9. AMAZON argues, and Plaintiff does not dispute, complete diversity of citizenship exists between Plaintiff and Defendants, and has existed since the time the State Court Litigation was filed. See 28 U.S.C. §§ 1332(a)(1), (c)(1). The amount in controversy exceeds jurisdictional limits.

10. Venue is appropriate because the acts giving rise to this lawsuit occurred within Tarrant County. Venue is therefore proper in the Northern District of Texas.

## FACTS

11. This is a civil rights complaint for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII") and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"). It is also a complaint for personal injuries sustained while performing work on behalf of a non-subscriber.

12. AMAZON is the largest and fasting growing distributor in the United States. Between 2017 and 2022 it added more than 800 new facilities and 500,000 workers to to its operations.

13. Globally, AMAZON employs approximately 1,541,000 people, making it one of the largest employers in the world. By comparison, the United States Military had a total of 1.3 million active-duty personnel in 2022, making AMAZON a larger employer than the entire United States Military.

14. AMAZON is the second-largest employer in the United States, behind only Walmart.

15. According to analysis performed by the Strategic Organizing Center (SOC) using data from the United States Occupational Safety and Health Administration More than half of the serious injuries that occur in warehouses in the United States occur in AMAZON facilities.

16. According to data reported to OSHA, AMAZON workers suffered an annual serious injury rate of 6.6 per 100 workers. This amount is more than double the industry average.

17. Workers at AMAZON sustained nearly 39,000 injuries in 2022.

18. AMAZON uses extensive productivity and monitoring systems, which increase pressure on workers and cause them to move at dangerous speeds.

19. Mr. Kadel was employed in an AMAZON warehouse located at 700 Westport Pkwy, Fort Worth, TX 76177, known as "DFW7."

20. DFW7 is a large fulfillment center where customer orders are packed and shipped. DFW7 is an extremely large warehouse and plans filed by the developer reflect the facility as 1.1 million square-feet.

21. DFW7 is even more dangerous than the average AMAZON warehouse. In 2019, DFW7 had an injury rate of 9.59, meaning approximately 1 in 10 workers reported an injury requiring treatment beyond first aid.

22. Mr. Kadel began his employment with AMAZON many years ago. His job duties have primarily included packing items of various weights into their final packaging for shipment.

23. Mr. Kadel has successfully occupied several positions during his years as an Amazon employee.

24. Mr. Kadel survived malignant cancer while an employee at DFW7. Even while undergoing chemotherapy, he continued to work without injury, in a role where he ensured the line moved smoothly.

25. Both prior to and following the remission of his cancer, Mr. Kadel sustained several disabilities as defined by the ADA Amendments Act requiring accommodation. His disabilities included, but were not limited to, the replacement of his colon with a J-Pouch, which is a disability as defined in 42 U.S.C. 12102(2)(B), mild intellectual impairment, and malignant neoplasm of the colon (in remission).

26. Upon completion of chemotherapy, Mr. Kadel was moved to the packing division, the essential function of the job is to pack small items into large plastic envelopes for shipping.

27. Mr. Kadel experienced blatant disability discrimination, including being told by his supervisor that his "disability was not welcome" and that he "did not belong" because of his disability.

28. Moreover, for several years, and as detailed below, Mr. Kadel had difficulty securing reasonable accommodations.

29. In the packing division, items arrive in the smalls department via a large conveyer belt packed with yellow plastic totes. The totes arrive above eye-level and it is difficult for employees to gauge the weight of the tote. Removing the tote requires a twisting motion.

30. Mr. Kadel sought accommodations that would enable him to safely pack. As detailed herein, a few accommodations were granted on paper. However, between the accommodations

that were expressly denied and those granted, but not enforced, Mr. Kadel was forced to work in unsafe conditions that violated the orders of his physicians.

31. Although Mr. Kadel did his best to "make rate" as safely as he could, he was ultimately injured when retrieving an over-weight tote. Due to the lack of accommodations and basic safety features, Mr. Kadel was severely injured.

### III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

32. Plaintiff timely filed charges of discrimination with the United States Equal Employment Opportunity Commission ("'EEOC").

33. On June 20, 2023, the EEOC issued Mr. Kadel a Right to Sue letter.

34. Mr. Kadel timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

### FIRST CAUSE OF ACTION

### VIOLATION OF TITLE I OF THE AMERICANS WITH DISABILITIES ACT

35. Kadel incorporates each other allegation herein by reference.

36. The Americans with Disabilities Act, as amended states, "no covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112.

37. AMAZON is a covered entity under the Americans with Disabilities Act as an employer, employment agency, labor organization, or joint labor-management committee, with 15 or more employees, for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

38. AMAZON is not a corporation wholly owned by the government of the United States, an Indian tribe, or a bona fide private membership club (other than a labor organization) that is exempt from taxation under Internal Revenue Code Section 501(c).

39. Mr. Kadel has multiple disabilities, each of which substantially limits major life activities as defined by the ADA Amendments Act of 2008. Mr. Kadel has malignant neoplasm of the colon, which has resulted in the need for multiple abdominal surgeries including a near-total removal of his colon. Following the removal, Mr. Kadel now has a J-pouch, an alternative to a colostomy bag. Mr. Kadel has a mild intellectual impairment, which also qualifies as a disability.

40. As set forth in further detail below, Mr. Kadel tried diligently to participate in the interactive process to enable him to continue to do his job in a safe manner. However, in violation of the standards set forth in the ADA and related laws, Ms. Kadel was not adequately accommodated.

41. Instead of being reasonably accommodated, as required, Mr. Kadel was mocked. Multiple managers and even disability leave services personnel questioned the validity of his disability or need for accommodations. He was accused of having a "fake" disability and told that "colectomy" was a made-up word. One manager even asked him if he was "sure he wasn't just fat." (Mr. Kadel weighs approximately 160 pounds).

42. On multiple occasions, Mr. Kadel identified reasonable accommodations that would enable him to safely perform his job duties. However, Amazon rejected and/or declined to enforce the reasonable accommodations he required.

43. On or about January 16, 2023, Mr. Kadel was working in the "smalls" department. In this department, items that have been ordered and "picked" come down the line so they can be packed and shipped. The items come down a line at about shoulder height. Orders are packed in large

yellow plastic totes. Workers in the smalls department pull the large totes off of the line and physically move the totes to other stations where they can be packed.

44. Despite Mr. Kadel's significant disabilities, he was required to pull totes from off the overhead line. AMAZON could have enforced policies preventing the over-packing of totes, provided equipment to Mr. Kadel that would have allowed him to safely pull items from the line, or enabled him to identify overweight items. Prior to pulling a tote, he had no way of knowing whether the tote exceeded his recommended weight requirement for the smalls department.

45. On or about January 16, 2023, Mr. Kadel pulled a tote from the line, and as he pulled it down, he heard a sudden popping in his abdomen, followed by excruciating pain. Since January 16, 2023, Mr. Kadel has been dealing with extreme abdominal pain and has had multiple medical procedures.

46. Following this serious incident, Mr. Kadel wanted to return to work, but Amazon refused to provide reasonable accommodations that would enable him to perform his job safely, without placing his health in grave danger.

47. Accordingly, AMAZON excluded or otherwise denied Mr. Kadel equal jobs because of disability.

48. AMAZON failed to make reasonable accommodations to the known physical or mental limitations of Mr. Kadel, who is an otherwise qualified individual.

49. AMAZON Defendant made prohibited medical inquiries and examination for the purpose of detecting the existence, nature, or severity of Mr. Kadel's ability to perform job functions.

50. Mr. Kadel was able to work with reasonable accommodations.

### IV. SECOND CAUSE OF ACTION – NEGLIGENCE PER SE

51. Mr. Kadel sustained a serious work injury while working in an AMAZON factory on or about January 16, 2023.

52. At the time of the incident, AMAZON was a non-subscriber to Texas Workers' Compensation Insurance. AMAZON owed continuous, non-delegable duties to its employees. At the time of the incident, and thereafter, AMAZON was negligent.

53. AMAZON had notice of Mr. Kadel's need for accommodation based on his prior requests, the statements of his doctors, and such needs were documented in AMAZON's own records.

54. AMAZON knew or reasonably should have known of the dangerous condition created by requiring an employee to perform work outside the scope of the employee's accommodation.

55. AMAZON had the duty to exercise ordinary care and manage the premises and its employees in a reasonable, safe, and prudent manner. AMAZON instructed Mr. Kadel to engage in a dangerous activity in performing his work, despite knowledge of Mr. Kadel's intellectual disability.

56. AMAZON was negligent in one or more of the following ways:

   a) Failing to furnish Mr. Kadel and those similarly situated with a safe place to work;

   b) Failing to properly maintain company equipment and machines in a safe condition;

   c) Failing to prevent overhead plastic totes from exceeding the recommended weight, creating an unergonomic and potentially dangerous condition;

   d) Requiring employees to pull totes without having any way to visually assess the weight or content of the totes;

   e) Failing to warn employees of dangerous conditions and equipment;

f) Failing to give Mr. Kadel breaks as required by his reasonable accommodations and failing to give all employees adequate rest to operate in a safe manner;

g) Allowing totes to move down the line at excessive and unsafe speeds;

h) Failing to develop policies and procedures to enable employees to report problems with tote speed or weight, without fear of reprisal;

i) Failing to furnish safe and suitable tools, equipment, and instrumentalities to perform the work in a safe manner;

j) Failing to hire and retain reasonably competent supervisory and safety personnel;

k) Failing to train employees, including Mr. Kadel and co-employees;

l) Training employees to prioritize speed over safety;

m) Failing to instruct employees regarding on-the-job safety;

n) Failing to develop policies and procedures for responding to and reporting on-the-job injuries;

o) Failing to have in place policies and procedures for responding to and reporting on-the-job injuries;

p) Failing to enforce any policies and procedures for responding to and reporting on-the-job injuries;

q) Failing to place required warning signage and/or placards alerting Plaintiff of the potential presence of hazards;

r) Failing to assess the workplace for tasks that expose employees to hazards;

s) Failing to warn employees of the hazards of their employment that are not commonly known or already appreciated;

t) Failing to provide Plaintiff with assistance to perform his job duties safely;

u) Violating Occupational Safety and Health Administration ("OSHA") laws and regulations; and

v) Other acts of negligence, incompetence, and/or omissions, which may be proved by the evidence at trial.

57. Each and all of the above acts and/or omissions constituted negligence and each and all were the proximate cause of the injuries to Plaintiff and the damages alleged herein.

58. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

59. AMAZON was grossly negligent, and that gross negligence proximately caused Plaintiff's injuries and damages. Viewed objectively from AMAZON's standpoint at the time of the incident, by disregarding the medical opinions of Mr. Kadel's physicians and the legal requirements applicable to AMAZON, and proceeding to place inordinate pressure on Mr. Kadel, involved an extreme degree of risk that was borne out on when he sustained a serious injury. AMAZON had actual, subjective awareness of the risk of severe injury at the time of the incident, as Mr. Kadel had informed AMAZON of his fear for his safety. Despite his knowledge of the risk, AMAZON was consciously indifferent to Mr. Kadel's safety and welfare. AMAZON's gross negligence was a producing and proximate cause of Plaintiff's injuries and damages.

60. Each and all of the above acts and/or omissions constituted negligence and each and all were the proximate cause of the injuries to Plaintiff and the damages alleged herein. In addition to the above, AMAZON, by and through its employees, servants, and/or agents, acting within the course and scope of their employment with AMAZON breached certain non-delegable duties in regard to the safety of its employees, specifically Plaintiff in this case. An employer has a non-delegable duty to develop and provide rules and regulations for the safety of its employees, furnish

safe machinery and instrumentalities, [*10] provide a safe work place, and select competent fellow employees, servants, and/or agents. AMAZON failed in all respects.

61. Furthermore, if an employer is a non-subscriber to Texas Workers' Compensation, it may not assert traditional common-law defenses available to defendants against whom a negligence cause of action is alleged, including: (1) contributory or comparative negligence; (2) assumption of risk; and (3) negligence of a fellow employee, pursuant to TEX. LAB. CODE § 406.033(a).

62. AMAZON was a non-subscriber to Texas Workers' Compensation at the time of the incident made the basis of this lawsuit.

63. AMAZON has breached one or more of the non-delegable duties herein described.

64. AMAZON was grossly negligent, and that gross negligence proximately caused Plaintiff's injuries and damages. Viewed objectively from AMAZON's standpoint at the time of the incident, the job Plaintiff was required to perform at rate, despite the known extreme degree of risk.

65. Defendant AMAZON had actual, subjective awareness of the risk of severe injury at the time of the incident. Despite its knowledge of the risk, AMAZON was consciously indifferent to Plaintiff's safety and welfare, and steadfastly refused to assist Mr. Kadel in obtaining reasonable accommodations that would enable him to work safely.

66. AMAZON's gross negligence was a producing and proximate cause of Plaintiff's physical injuries and damages.

## **JURY DEMAND**

67. Plaintiff Kadel demands trial by jury on all issues and defenses in this case.

## DAMAGES

68. As a result of the incident made the basis of this lawsuit described in the preceding paragraphs and the negligence of Defendants, Mr. Kadel sustained severe injuries and damages in the past and will, in reasonable probability, sustain these damages in the future.

69. Mr. Kadel respectfully requests that the trier of fact determine the amount of the damages and losses Mr. Kadel has incurred in the past and will reasonably incur in the future, as well as the monetary value of those damages, which include but are not limited to:

   a. Physical and emotional pain and suffering;
   b. Mental anguish;
   c. Physical impairment;
   d. Medical care expenses;
   e. Out-of-pocket economic losses;
   f. Loss of earning capacity and/or lost wages;
   g. .Loss of enjoyment of life;
   h. Consequential damages;
   i. Punitive damages; and
   j. Stigmatic damages.

70. Mr. Kadel seeks all damages allowed under the law, including personal injury and civil rights damages.

71. Mr. Kadel seeks additional equitable relief as may be appropriate, including without limitation an Order enjoining Defendant from engaging in the unlawful acts complained of herein and an Order requiring Defendant to keep statistics on reports of disability discrimination complaints.

72. Mr. Kadel seeks reasonable attorney's fees and costs, including reasonable expert fees.

73. Mr. Kadel seeks pre- and post-judgment interest at the maximum rate allowed by law.

**PRAYER**

WHEREFORE, premises considered, Mr. Kadel respectfully prays that Defendant be cited to appear and, that upon a trial on the merits, that all relief requested be awarded to Plaintiff to which he may be entitled.

Respectfully submitted, this 19th of December 2023.

_____
S. Tomiyo Stoner, Esq.
SBN 24103950
UNDAUNTED LAW FIRM, P.C.
1500 Dragon St.
Suite 160
Dallas, Texas 75207
Tel. (214) 415-7340
tstoner@undauntedlaw.com